SARAH A. HANSON and MARTIN B. BURRIS *v.* ELLIE E. COCHRAN.

*Acknowledgment—Clerical    Omissions — Affidavit — Jurat — Chattel Mortgage—Date of Lien.*

A notary public may supply a clerical omission made by him in the certificate of the acknowledgment of a deed taken before him.

The *jurat* to an affidavit made before a notary public may be embodied in the certificate or appear at the foot thereof.

The lien of a chattel mortgage attaches from the completion and delivery of the mortgage and not from the time of recording.

(*New Castle, February, 1890.*)

PETITION to take money out of Court.

This proceeding is on a petition of Mrs. Hanson, the chattel mortgagee, to take the money out of Court as applicable to her mortgage, and is resisted by Mr. Burris who claims the same under the execution above stated.

On June 3, 1889, Ellie E. Cochran executed to Mrs. Hanson a chattel mortgage on said goods.  The certificate of acknowledgement was materially defective in that it omitted the words " party to this instrument of writing, known to me personally to be such."

This defect was corrected by interlineation of the omitted words by the notary on the evening of June 8, 1889 (after the lien of the execution attached) and the mortgage was recorded June 10, 1889.

Judgment was entered June 8, 1889 by virtue of a bond and warrant of attorney, given by Ellie E. Cochran (prior to the execution of the chattel mortgage) to Sarah A. Hanson and Martin B. Burris for $2,000 and a *fi fa* was issued on the same day to wit, June 8, 1889, and placed in the sheriff's hands at 9.30 A. M. and became an unquestioned lien from that time.

The petitioner, Burris, also claims that the mortgage is void for want of a legal affidavit as required by the statute, for while

the affidavit accompanying the mortgage is sufficient in all other respects, *it is without any jurat,* or anything to show affirmatively by whom the oath was administered, or that it was administered by a duly qualified officer, etc.

*Charles B. Lore* and *Harry Emmons,* for the petitioner:

The material question is at what time does the lien commence, from the acknowledgment or recording of the mortgage.

1. The time mentioned in the act is the time of acknowledgment and provides that the mortgage shall be a lien if recorded within 10 days after that time—and if so recorded, the lien relates to the time of acknowledgment.

2. A mortgage is a conditional sale and conveyance and takes effect immediately unless controlled by the terms of the Statute. This is evidenced by the language of our Rev. Code, Chap. 83, Sec. 19, page 504, where it is found necessary to negative such effect by providing that the lien of a mortgage shall be from the date of recording it and not before.

3. The act follows the statutes relating to the recording of deeds whereunder, if deed be recorded within three months from the date of sealing and delivery thereof, it takes effect from its date.

R. C., Ch. 83, Sec. 14, 503 ; Vol. 16, Del. Laws, Ch. 520, p. 394.

4. A chattel mortgage is a conditional sale, which would be void under our statute of Frauds against subsequent *bona fide* creditors, if the chattels remained in the possession of the mortgagor. The Act of March 23 makes the acknowledgment of the mortgage equivalent to delivery of the goods, provided the mortgage is

lodged in the recorder's office within 10 days from such time of acknowledgment.

The mortgage, if delivery of goods to mortgagee accompanied it, would take effect from execution. Recording, if made within 10 days, is in lieu of such delivery and operates as the date of acknowledgment.

5. There is a large class of cases that maintain chattel mortgages take effect from the date of registration. These are all based upon the express language of the statutes in each case, namely :

*Smith v. Smith*, 24 Me., 555 ; *Sheldon v. Connor*, 48 Me., 584; *Rich v. Roberts*, 48 Me., 548 ; *Morrill v. Sanford*, 49 Me., 566 ; *White v. Denman*, 1 Ohio State, 110 ; *Holliday v. Franklin Bank*, 18 Ohio, 533 ; *Woodruff v. Robb*, 19 Ohio, 212 ; *Wilson v. Leslie*, 20 Ohio., 161 ; *Cass v. Rothwell*, 42 Ohio, 380 ; *Bryan v. Gordon*, 11 Mich., 531 ; *Reynolds v Case*, 60 Ibid, 73 ; *Gregg v. Sanford*, 24 Ill., 17 ; *Davidson v. Beard*, 2 Hawks, 520, N. C.; *Tate v. Britain*, 3 Hawks, 55, N. C.; *Work v. Harper*, 24 Miss., 517 ; *Westcott v. Gum*, 4 Duer, 107 , *Bk. of Ky. v. Vance*, 4 Litt., 168, Ky.; *Ogg v. Randolph*, 4 H. & M., 445, Va.; *Benddict v. Smith*, 10, 126 ; *Folsom v. Clemence*, 111 Mass., 273 ; Note 4, *Hermann on Chattel Mortgages*, 160.

The principle involved in these cases is a strong point in favor of our contention. They hold that if the mortgage is recorded forthwith, in compliance with the statute, it avails. If we substitute ten days, the time in our statute for forthwith, the mortgage becomes a valid lien from date of acknowledgment if lodged for record in that time, as it is a compliance with the statute and makes the lien indefeasible for three years from the acknowledgment.

6. Where the time is found in statute, it is sufficient to record within that time.

*Cherryworth v. Dailey*, 7 Ind., 284.
Approved in *Hermann on Chattel Mortgages*, 161.

*Alexander B. Cooper* and *Edward G. Bradford,* for the execution creditor:

1. A mortgage of a chattel vests a property in the mortgagee (not an absolute title) but a present title defeasible upon the performance of a condition subsequent. An actual delivery and change of possession are not necessary to perfect the mortgagee's title if the mortgage is duly recorded, the registration or record of the mortgage is equivalent to delivery, and gives constructive notice of its execution and existence.

*Jones on Chattel Mortgages,* Secs. 1, 4, 8, 176, 190, 236, 426 ; *Rindskoff v. Vaughan,* 40 Fed. Rep., 394, 396 ; *Bullock v. Williams,* 33 Mass., 33, 34; *Forbes v. Parker,* 33 Mass., 462 ; *Cotton v. Marsh,* 3 Wisconsin, 217 ; *Harrington's Exr. v. Britton,* 23 Wis., 541 , *Morrill v. Sanford,* 49 Maine 566 ; *Coles v. Clark,* 3 Cushing (57 Mass.), 399 ; *Hall v. Sampson,* 35 N. Y. Ct. App., 274 ; *Porter v. Parmley,* 52 N. Y. Sup. Ct., 185.

2. Even if the mortgage were the first lien (which we deny) the goods being sold under a subsequent execution, were sold subject to the mortgage, and not clear of it, and the proceeds were applicable to the execution.

*Freeman on Executions,* Sec. 117 ; *Jones on Chattel Mortgages,* Secs. 555, 556, 559, 560, 561, 562, 592; *Baird v. Warwick Machine Co.,* 40 Fed. Rep., 386 ; *Cotton v. Marsh,* 3 Wisconsin, 199 ; *Hall v. Sampson,* 35 N. Y. Ct. App., 274; *Nichols v. Mead,* 2 Lansing (N. Y.), 222; *Mattison v. Baucus,* 1 N. Y. Ct. App., 295 ; *Galen v. Brown,* 22 N. Y. Ct. App., 37; *Manning v. Monaghan,* 28 N. Y. Ct. App., 585 ; *Hull v. Carnly,* 11 N. Y. Ct. App., 501 ; *Cary v. Hewitt,* 26 Michigan, 228 ; *Nelson v. Ferris,* 30 Michigan, 497 ; *Hamill v. Gillespie,* 48 N. Y. Ct. App., 556 ; *Merrit v. Niles,* 25 Illinois, 254; *Beach v. Darby,* 19 Illinois, 622; *Spaulding v. Mozier,* 57 Illinois, 148 ; *Goulet v. Asseler,* 22 N. Y. Ct. App., 225, 230 ; *Porter v. Parmley,* 52 N. Y. Ct. App., 185 ; *Cotton v. Watkins,* 6 Wisconsin, 629.

There is nothing in our statute inconsistent with this rule so uniformly adopted in the other States.

3. Should there be doubt as to the correctness or application of the preceding principle, in this State under the statutes there can be no question as to the priority of our lien over the mortgage lien.

Our lien attached June 8, 1889.

The mortgage was recorded June 10, 1889.

The principle is well settled by reason, by public policy, by all of the anologies of the law, and by the decisions of the Courts of other States, which have similar (and in Massachusetts almost identical) statutes in this respect to our own, that—

Where the statute does not expressly state at what date the lien shall attach, a chattel mortgage does not become a valid lien against the creditors of the mortgagor until it is *actually* recorded, notwithstanding there is an express limitation of time within which it must be recorded.

The limitation of time is to prevent secret liens from being carried in the pocket,—to make the parties *themselves* act with diligence, otherwise it shall be void *even as to them.*

*Jones on Chattel Mortgages,* Secs. 262, 263; *Wilson, Jr., v. Leslie,* 20 Ohio, 161; *Drew v. Streeter,* 137 Mass., 460; *Cass v. Rotman,* 42 Ohio State, 380; *Hudson v. Warner,* 2 Harris & Gill, (Md.), 320; *Gaff v. Harding,* 48 Illinois, 148; *Stephenson v. Browning,* 48 Illinois, 78; *Smith v. Acker,* 23 Wendell, 653, 670; *Reynolds v. Case,* 60 Mich., 76; *Bank of Des Moines v. Hodgin,* 24 Fed. Rep., 1; *Stewart v. Beale,* 7 Hun. (N. Y.), 405; affirmed 68 N. Y., 629.

Even if the lien of the mortgage should begin at the *date of the acknowledgement,* in this case there was no *acknowledgment* which would authorize the recording of the instrument until *after* the lien of the execution attached.

The words omitted by the notary were " party to this instrument of writing, known to me personally to be such."

These are essential words,—there must be both a personal acknowledgment, and the identity of the party to the officer, and without they both affirmatively appear in the certificate of the officer (which is the *only* evidence of the acknowledgment) there is no acknowledgment sufficient to admit the instrument to record ; and the limitation of ten days within which it must be recorded, can only begin from the date of a valid and legal acknowledgment, which in this case, we repeat was not until after the lien of the execution attached.

There was no jurat to the affidavit nor anything to show by whom it was administered, which is necessary to a legal affidavit, and without it there is no affidavit.

1. *Tidd's Practice*, 179 (n), 494 (Top) ; *State v. Green*, 15 N. J. (3 Green), 88 ; *Smart v. Howe*, 3 Mich., 590 ; *McDermand v. Russell*, 41 Ill., 490 ; *Ledow v. Green*, 1 Denio (N. Y.), 429.

COMEGYS, C. J.: The contention in this case with respect to the priority of claim upon the money arising from the sale of the personal property of Mrs. Ellie E. Cochran, under execution process issued against her at the suit of Sarah P. Hanson and Martin B. Burris, presents for the first time the question of the effect of a chattel mortgage, where an execution intervenes between the time of its acknowledgment and that of lodging it for record. The statute, with respect to chattel mortgages, was passed by the General Assembly at the January session, 1875, and, so much of it as it is necessary to quote, is in these words :

" Section 1. A bona fide mortgage of personal property, if duly signed, sealed and delivered by the party making it, and acknowledged as mortgages of real property are, shall for the space of three years, be a valid lien upon such personal property, though the possession remain in the mortgagor, if it be lodged for record in the recorder's office of each county where any of the mortgaged prop-

-erty is held, within ten days from the time of the acknowledgment thereof.

\*     \*     \*     \*     \* .     \*

Section 4. No mortgage made under the provisions of this act shall be valid, unless there be indorsed upon or annexed to it, and to be recorded with it, an affidavit that the said mortgage was made for the bona fide purpose of securing a debt or making indemnity, as the case may be, and was not made to cover the property of the mortgagor, or protect it from his creditors, or to hinder or delay them in the collection of their debts.     \*     \*     \*     "

15 Del. Laws, page 616.

The facts appear to be that the mortgage was made by the said Ellie E. Cochran to Sarah A. Hanson, and executed and acknowledged, according to law, on the third of June, 1889, and lodged for record on the tenth of the same month. It was taken to the Recorder's Office to be recorded a day or two before; but when it was handed by the mortgagee, or her agent, to the Recorder, he discovered that the Notary Public had omitted to insert, in the form of acknowledgment prescribed by the statute on that subject for deeds acknowledged before notaries, the words necessary to show that the parties to the acknowledgment were personally known to the notary. Upon that he gave it back for the necessary correction, which was duly made by the notary, and then the paper was returned to the Recorder and was by him recorded. Before record was made, the said Sarah A. Hanson and Martin B. Burris on the eighth of June, 1889, caused a judgment bond they held against the mortgagor, made on the sixteenth of June, 1888, for the real debt of $2,000, with interest from said day, to be entered in the Superior Court of New Castle County, and a *fi. fa.* issued; upon which writ the property of the mortgagor, conveyed in mortgage to her the said Sarah A. Hanson, was levied upon, and afterwards sold under a *venditioni exponas* following said *fi. fa.*, and the money arising from the sale of said mortgaged property was paid to the sheriff, but it being claimed by the mortgagee and the execution

creditors adversely it was brought into Court by the sheriff, by virtue of the statute in the case of disputed rights to sales of goods and chattels. The question above stated is therefore before the Court for decision.

Three points were made by the counsel for the execution creditors, in the argument before the Court:

1st. That the acknowledgement of the mortgage was insufficient, on account of not being in conformity with the law for such, at the time it was presented for record; and that the correction afterwards made in it by the notary, was unavailable without re-acknowledgment—which did not take place. The effect therefore of this objection is, if a valid one, that no record of the mortgage was ever made, in legal effect:

2d. That there is no *jurat* to the notary's certificate of acknowledgment; and, therefore, there is no valid certificate:

3d. That the lien of the mortgage—treating the record of it as valid—did not attach to the property mortgaged, until the instrument itself was lodged for record, which was not till the tenth of June, 1889.

With respect to the first point, or objection, it seems sufficient to say, that it was entirely competent for the notary to perfect his certificate of the acknowledgment by making it comply with the requirements of the statute. As no suggestion was made to impugn the act of the notary in making the alteration, we must suppose that the act was done *bona fide*, and that he had personal knowledge of the mortgagor. There can be no question of the right of an officer to supply any clerical omission made by him, where there is no *mala fides*.

As to the objection (the 2d) that there is no *jurat* to the affidavit accompanying the mortgage (which is admitted to be valid in other respects), it appears to be without any force—for it is clearly shown, by the language of such affidavit, that, on the day men-.

tioned therein, the affiants appeared before a person described as a Notary Public, and that there were sworn or affirmed on the Holy Evangels, etc., and that they did severally depose and say, etc. The certificate closes with the form or attestation given in the Revised Code for acknowledgments before a notary, (Chap. 36.) The only difference between the certificate and the ordinary *jurat* is, that the essential characteristic of the latter, as commonly understood and used—that is, that the affiant *swore* before the notary— is embodied in the certificate itself, and not added at the foot of it by the officer· A *jurat* means that the affiant swore before the officer taking the affidavit: this can be as well certified in the body of the certificate, as is the case here, as at the foot of it. For here, as in most cases, the affidavit and certificate are united. The closing words—"Given under my hand and seal of office on the day and year aforesaid. W. N. Wilson, Notary Public"—is the declaration of the officer, under his hand and seal, that what is before stated is true as a fact—which includes all stated before by him. Then we have the notary's statement that on the day and time mentioned the affiants appeared before him, a notary of the State, and that being sworn, or affirmed, they deposed and said—that is they *swore*—etc. We have, then, the *jurat* required for affidavits, when the officers certificate is perfected by the writing at the foot of the affidavit, and his official seal is annexed. The court notices, judicially, all public officers—notaries being very ancient ones: and unless there be evidence in some form, to the contrary, presumes that they act legally in their office—which would warrant the presumption that, in this case, the parties, making the acknowledgment and affidavit, were personally known to the notary.

The 3d point, or objection, is—that the lien of the mortgage (supposing it entitled to be recorded) did not attach to the property, until it was lodged for record on the tenth of June, 1889. This involves inquiry into the object of the law.

Before the passage of the chattel mortgage act, there was no other way of acquiring a *lien* upon chattels, than through the in-

strumentality of a *fi. fa.* issued upon a judgment and placed in the hands of the sheriff for execution, at least that was the usual mode therefor. A different mode is that provided by the chattel mortgage act. By its provisions, one can be created without judgment and execution, and all the injury suffered by an execution defendant (including expense) by the exposure the writ creates, is avoided by resort to the simple means of a mortgage made and recorded in pursuance of that statute. Its provisions are perfectly simple, only requiring the usual formal acts to make valid ordinary deeds, together with affidavit to attest the *bona fide* character of the instrument. The evident purpose of the act was to enable a mortgagor to secure the debt of the mortgagee, or give indemnity to him against some liability he might incur in a suretyship for example, for such mortgagor, while at the same time the former should run no risk by leaving the property in the hands of his debtor to be used and dealt with as his own—which, without the provisions in that respect in the act, could not be done so as to make the transaction a valid one against creditors. Chattel mortgages have always been valid, though the mortgagee did not take possession of the property mortgaged : but according to our decisions, no sale of chattels is good without actual delivery to the vendee as a *bona fide* transaction, to perfect an absolute purchase, according to the requirements of our statute about bills of sale; and from the language of the learned Chief Justice in his charge to the jury in the case of *Bowman v. Herring*, 4 Harrington, 458, mortgages of personal property stand upon the same footing as bills of sale where in either case possession of the property is not taken by the mortgagee, or vendee. In the case before us, that decision has no bearing ; for the reason that, by the terms of the chattel mortgage act, possession by the mortgagee is not necessary to validate the transaction. The mortgage then from Mrs. Cochran to the claimant Sarah P. Hanson, was not only good as against the former, but also everybody else. Now what, in this aspect of the case, was the effect, with respect to making the mortgage upon the property

mentioned in it. The same precisely as a mortgage of real estate would be as to the land included in it. By the common law the legal estate in mortgaged land passes, subject to the right of redemption by the mortgagor upon paying the mortgage money, or complying with the condition of the instrument. But the title acquired by the mortgagee was never absolute until a decree in equity of foreclosure; which takes away the right to redeem, and the mortgagee's title is then perfect. A Court of Equity, however, looking at substance rather than form, treats the mortgage as accessory of the debt, or principal; and while it does not deny to the deed its qualities as a legal instrument, with the effect it has in law; yet it regards it also as an incident only of the transaction of loan, and the estate made by it, as revesting in the mortgagor, upon the loan being paid, by operation of law—thus bringing the re-transfer within the exceptions in the 17th Section of the English Statute of 29 Car. II. In this State, by our usage and practice, and the uniform action of the courts in upholding such course, mortgages of real estate are treated as mere securities for money, in no sense depending for their validity against subsequent purchasers and creditors upon possession of the land. It is expressly provided, however, by the statute, that they shall be liens from the time of recording them and not before. But when such mortgages are for purchase money, they have preference, with respect to the land mortgaged, of any judgment or other lien created or suffered by the mortgagor, although it is of a prior date to such mortgage. They are thus treated as liens like other liens, the conveyance form of the mortgage imparting no interest in the land, transferable to a purchaser, devisable, or descendible. Still, and this is the strange thing about mortgage security of land, that if the mortgagee be in possession in pursuance of his mortgage, and obtain decree of foreclosure in equity his mortgage operates a title to him, free from the equity of redemption, of all the estate conveyed by it, and he need not resort to any further steps to secure it: in other words, the decree bars the mortgagor's equity of redemption, and the mortgagee

being in and having the legal conveyance formally passing the title, such title unites with the estate he already enjoys through the mortgage, and makes him the absolute owner. Such is the nature of a mortgage of real estate, and the mortgagee's rights under and by virtue of it.

So far as the effect of a mortgage is concerned, there is no difference between one of lands and one of goods and chattels, irrespective of local laws of registration. Possession of the mortgaged premises by the mortgagee is notice to everybody; and in equity, where a mortgage can be made by deposit of the title deeds alone, the custody of them is notice also. Before such laws were made, possession of title deeds was the evidence of ownership of land; and no prudent man loaned his money on mortgage without obtaining and keeping the custody of them. Now, there are no mortgages by deposit of title deeds: but conveyances in fee are usually made, with condition that if the money be paid according to the terms of the bond recited in it, the mortgage and the estate conveyed by it shall cease and become void, otherwise shall remain in force. Notwithstanding the doctrine that a mortgage is a mere lien, the old idea of estate conveyed still remains; and it must exist in fact; else it would be senseless to say that the effect of a decree of foreclosure in equity is to make the title absolute when the mortgagee is in possession. No estate can be made absolute, which did not exist before with a qualification, or in an imperfect condition. With us, since the statute putting mortgages on a footing with judgments, with respect to the provision for *scire facias* to obtain execution of the former, no bills in equity are filed for foreclosure; but the judgment on the *sci. fa.* is equivalent to a decree in that respect, and takes away the right to redeem. But it does not, like a decree, operate to perfect title to the land; for the notion, of lien merely, forbids the idea of any practical conveyance of estate by the mortgage deed,—though, theoretically, one passes. So much upon this subject.

With the foregoing statement of the law of mortgages, it is

easier than it would otherwise have been, to treat the question raised by the third point, or contention, of the argument, made for the priority of the execution over the mortgage. The two questions here arise—First, what was the effect of the making of the mortgage from Mrs. Cochran to Mrs. Hanson, as a single act? Second, when did the lien, provided by the act of assembly, attach?

By the first section of the statute under consideration, possession by a mortgagee of the property mortgaged, as said before, is not necessary to its validity : it may remain in the mortgagor. The consequence of this would be but for another provision in the same section, that the mortgagee would stand exactly as if he had actual possession himself, and no lien against the mortgagor by execution made after the transaction of mortgage could affect the mortgagee's interest. That provision is, in effect, that the lien, which the statute declares shall exist by reason of the mortgage, shall be upon the condition that it shall be recorded within ten days from the time it is acknowledged. The counsel for the execution argued that as no particular time is given when the lien shall take effect, it can only be when it is delivered to the recorder for record—likening such a mortgage to the ordinary one of real property, which is a lien only from the time it is lodged with the recorder for that purpose. If this be the correct view to take, then the mortgage here was no lien, by force of the statute, when it was lodged for record : but if the true construction to give the clause in the act be— that the lien was intended to be created from the time of the transaction between the parties provided record was made of the mortgage within ten days thereafter—that is ten days after it is signed, sealed, delivered and acknowledged, which was on the third of that month—then the lien of the execution was subsequent to that of the mortgage.

In considering this question we must keep in mind the fact, that the statute did not create or make valid chattel mortgages ; for such forms of security are very old in the law, though not always so comprehensive in their subjects as they have been for many

years. They were originally chiefly if not entirely of terms for years: now they enbrace chattels of every kind, movable and immovable. What would seem to have been the purpose of the legislature in passing the act was to put them upon the footing of a *fieri facias* in the respect of making them liens before the act of notoriety performed with respect to them. In the case of a *fi. fa.* this act is by seizure of the goods (theoretically now by the mere levy though practically originally) which, if made within sixty days of the time when the writ is delivered to the sheriff to be executed, binds the goods of the defendant from the time of such delivery : that is, it binds from the delivery all such goods as are levied on before the expiration of sixty days. As suggested heretofore a motive for passing the act (and the supposition that such existed, is not at all unreasonable) may have been to enable one owning personal property to make safe a loan to him, by giving the lender the security of such property by way of a lien, so as to render unnecessary a change of possession. In fact it is difficult to imagine any other motive for the act ; as mortgages were not authorized by it, they being existing forms of security. Instead of the requirement of taking possession to make the mortgage bind at once as against subsequent liens (which would deprive the owner of the use of his property) the legislature must, we think, have intended to make the lien created by the act bind from the time the mortgage was perfected, if the mortgagee placed it upon record within ten days thereafter. By such construction a mortgagee, if the security were good, would be safe in parting with his money ; and no creditor prior or subsequent could be postponed to the mortgagee, in the way of lien, for more than ten days from the time the mortgage lien was created. The ten days allowed to record the mortgage so as to make it a lien was no doubt provided to require that the mortgage should be recorded as soon as convenient, for public information, and that a false credit should not be given to the mortgagor by reason of his continued possession of the mortgaged property. Besides it might happen that the transaction was made by parties at a distance, who

by this provision were put upon a footing with those whose mort-
gage could be lodged for record at once.   If the object of the
legislature was as it would seem to have been to encourage
the loaning of money to needy borrowers owning no real es-
tate, by other means than the security of an execution levy—
that is by chattel mortgage—then, as the lender is by the act
told, in effect, that he may leave it in the hands of the borrower
without risk (which, if he were to do without the act, his mortgage
would be unavailing to him) provided, he should record his mort-
gage within ten days of the time of the transaction, it would surely
defeat this beneficent object in many cases (and that before us is
one of them) if an execution levied, or other mortgage made and
put upon the record within the ten days allowed the first mortgage,
and before he had put his there, could have priority over it.   A
mortgagee who sells land is allowed sixty days from the time of
making it to put his purchase money mortgage upon record in
order to secure him in his lien for the purchase money against all
other liens created or suffered by the mortgagor prior or subsequent
to it.   But this lien without such provision, would only exist from
the time the mortgage was recorded.   Wherein is the creditor for
unpaid purchase money of land more meritorious than one who,
for example, lends the purchaser the money to make the cash pay-
ment with, when part of the purchase money is paid in cash ? The
latter may chooose, instead of taking a subsequent lien on the land,
to have a mortgage on personal property.   He ought to have pri-
ority with respect to the goods, the same as a mortgagee with a
purchase money mortgage of land has.   And the similarity of lan-
guage with respect to lien in the chattel mortgage act, with that in
the chapter about conveyances in the Revised Code (Chap. 88, Sec.
21), strongly supports the view that the chattel mortgage was in-
tended to be a lien from the completion of the transaction, if
recorded in ten days.   The language of that section is, if recorded
within sixty days.   Again, by the same chapter, Sec. 17, a pur-
chaser of real estate had a whole year (now three months) in which

to record his deed, to protect him against subsequent creditors, mortgages, or purchasers for valuable consideration. During that whole year the vendor might remain in possession, and obtain credit upon his apparent ownership. How much more unreasonable this provision, than a ten days lien on personal property without notice, when the mortgagee is encouraged by the statute to leave the property mortgaged in the hands of the mortgagor? It does seem that, to make the statute of chattel mortgages valuable to needy men, it must be read as intending to make their creditors by mortgage, who record their mortgage in ten days, as safe as those by judgment when they have the debtors property levied on by the sheriff; which they would not be, unless the making of the mortgage, if the condition of the act is complied with, is to have the same effect as the levy of an execution. The duration of the lien is the same in both cases—which strengthens the argument, that they were to be assimilated in treating the making of the mortgage and recording it in time, as the same in effect, as to lien, as an execution levy.